UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL GEORGE LAHOOD, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-1874 |
| | § | |
| WILLIAM  STEPHENS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Petitioner Michael George Lahood was convicted of aggravated kidnaping and aggravated sexual assault in the 185th Judicial District Court of Harris County, Texas.  That court sentenced him to 30 years imprisonment.

This case is before the Court on Lahood's first amended petition for a writ of habeas corpus and respondent William Stephens' motion for summary judgment.  Having carefully considered the petition, the motion, all the arguments and authorities submitted by the parties, and the entire record, the Court is of the opinion that respondent's motion should be denied and Lahood's petition should be granted.

## I.   Background

The background facts are not in dispute.  As summarized by the Texas Court of Appeals in affirming Lahood's conviction:

> Complainant, Shelly Boyd Mitchell, testified that she and [Lahood] began living together in Aransas Pass in August 2003. She said that they spent their time fishing and taking illegal drugs and that they shoplifted and borrowed money when they needed things.
>
> In September 2003, they discussed leaving Aransas Pass, but Mitchell told [Lahood] she did not think it was a good idea. One day, [Lahood] packed Mitchell's car with fishing gear and dirty clothes, leading Mitchell to believe they were going to fish and wash laundry. When she realized [Lahood] intended to take her out

of town, Mitchell told him that she did not want to go, and he replied that "it wasn't a question of whether [she] wanted to or not. [She] was going." As they drove, she insisted that she wanted out of the car, but he wouldn't stop and became very angry. She tried to open the door and get out while the car was moving, but he pulled her back. She tried several more times to get out of the car, but he told her that he would kill her if she didn't "mind" him. [Lahood] made various threats to Mitchell, including that he would cut her throat, beat her beyond recognition, and cut her tattoos out so that no one would recognize her. [Lahood] physically attacked Mitchell by pulling her hair, beating her head into the car's console, biting her arms, and choking her. Mitchell was terrified and believed that [Lahood] would carry out some of these threats. She said that he had a knife with him. She made several more attempts to escape, including by putting the car in park, trying to take the keys, trying to climb out the window, and telling him to pull over. Near Wharton, [Lahood] stopped the car, gave Mitchell some pills, tied her wrists together, and told her to go to sleep.

[Lahood] told Mitchell that they were going to get "good dope." She testified that at this point she was sick and tired, and she told him she didn't want any "dope." Once they arrived in Houston, [Lahood] stopped in a parking lot, made Mitchell lie down in the back seat, and tied her ankles together. Mitchell said that she felt like she could have gotten out of the car at that time but that she couldn't have gotten away because she was not familiar with the Houston area. [Lahood] then drove to another parking lot and sexually assaulted her. Afterwards, [Lahood] fell asleep next to Mitchell in the back seat of the car. She later woke [Lahood], and they checked into a motel room. They made several trips to buy alcohol and drugs. At one point, when they exited the motel room to go buy drugs, they saw a police car near the motel, and [Lahood] and Mitchell hurried back inside the room. When [Lahood] and Mitchell later got in their vehicle to drive away, police pulled them over because of a faulty inspection sticker. Mitchell told the officers that she had been kidnapped, and [Lahood] was arrested.

*Lahood v. State*, 171 S.W.3d 613, 617 (Tex. App. – Houston [14[th] Dist.] 2005, pet. ref'd).   The

Texas Court of Criminal Appeals ("TCCA") refused Lahood's petitions for discretionary review.

*Lahood v. State*, Nos. PD–1344-05, PD-1345-05 (Tex. Crim. App. Feb. 8, 2006).

Lahood filed state habeas corpus applications on May 7, 2007.  The TCCA denied the applications on June 26, 2013.  *Ex Parte Lahood*, 401 S.W.3d 45 (Tex. Crim. App. 2013).

On June 26, 2013, Lahood filed this federal petition for a writ of habeas corpus. Respondent moved for summary judgment on July 31, 2014.  Lahood filed a response to the motion on September 11, 2014, and filed an amended response on October 2, 2014.

## II.    Applicable Legal Standards

### A.    The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Under the "contrary to" clause, this Court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially

indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The solitary inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254 (d)(2); *Hill v. Johnson*,

210 F.3d 481, 485 (5th Cir. 2000). The State court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. §2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997).

### B.    The Standard for Summary Judgment in Habeas Corpus Cases

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). Insofar as they are consistent with established habeas practice and procedure, the Federal Rules of Civil Procedure apply to habeas cases. *See* Rule 11 of the Rules Governing Section 2254 Cases. In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). Where a state prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts, however, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir. 2002); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000); *Emery v. Johnson*, 940 F.Supp. 1046, 1051 (S.D. Tex. 1996), *aff'd*, 139 F.3d 191 (5th Cir. 1997). Consequently, where facts have been determined by the Texas state courts, this Court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

### III.   <u>Analysis</u>

Lahood contends that he was incompetent to stand trial.  He argues that his trial counsel rendered ineffective assistance by failing to investigate his mental health and lack of treatment, and to raise the issue of his competency to stand trial.  He further contends that he was denied due process when the trial court failed to order a competency hearing *sua sponte* and allowed Lahood to stand trial while incompetent.

#### A.   <u>Adequacy of Briefing</u>

Respondent first argues that Lahood waived all of his claims for relief because his petition is not accompanied by any briefing of the issues.  Lahood responds by noting that his petition was filed on a form provided by the Administrative Office of the United States Courts, and that the section of the form on which a petitioner is to list his claims specifically instructs the petitioner not to make any legal argument.  Rule 2 of the Rules Governing Section 2254 Cases requires only that the petition specify the grounds for relief, state the facts supporting those grounds, and state the relief requested.  Lahood's petition meets all of these requirements.

Moreover, the only briefing schedule this Court issued is contained in the order to answer entered on April 30, 2014.  That order set a deadline for respondent to answer the petition or file a dispositive motion, and a deadline for petitioner to reply to any such filing.  Respondent moved for summary judgment, and Lahood responded with a 30 page response fully briefing all of the issues in this case.  Three weeks later, he filed a 38 page amended response.  Lahood has thus fully briefed the issues in this case in accordance with the schedule set forth by this Court.  There is no basis upon which to deem the claims for relief waived due to inadequate briefing.

B.    **Ineffective Assistance of Counsel**

Lahood notes that he has a long history of mental illness, substance abuse, and mental health treatment.  Past events include suicide attempts, hallucinations, and treatment with psychoactive medications.  *See* II SH-01.[1]

Lahood's trial attorney, Leah Borg, was appointed to represent Lahood on September 8, 2003.  1 CR at 7.[2]  Lahood notes that he was receiving psychoactive medication from September 2003 until April 25, 2004, the day before his trial began.  He also states that Borg met with him several times in court during this period, but only once at the Harris County Jail.  That was for 1.25 hours on April 20, 2004.

Lahood contends that counsel learned before trial that he suffers from bipolar disorder and has a history of substance abuse, and that he needed and was taking Zoloft, Risperidol, and Zyprexa to control his mental illness.  *See Ex Parte Lahood*, 401 S.W.3d 45, 51 (Tex. Crim. App. 2013).   Lahood notes that counsel acknowledged that she was aware that these medications have been prescribed for people who have been found incompetent, but thought that the fact that Lahood was medicated rendered him competent.  *Id.*  Lahood's father and ex-wife stated that they told trial counsel of Lahood's mental health problems, but that counsel never pursued such information, and never called the ex-wife to testify at the guilt phase of Lahood's trial.  *Id.*

The TCCA also noted Lahood's behavior during trial:

> At trial, new signs of [Lahood]'s potential mental instability arose. During the guilt phase of the trial, [Lahood] engaged in multiple outbursts and claimed that he was not receiving his required psychoactive medications in jail. For example, on the second day of his testimony, [Lahood] complained that he was having

---

[1]      "SH" refers to the record of Lahood's state habeas corpus proceedings.

[2]      "CR" refers to the Clerk's Record.

> difficulty understanding the proceeding and that he was seeing
> lights blink.

*Id.*  Lahood further contends that counsel did not obtain or review his mental health records, speak with mental health staff from the Harris County Jail, or suggest that the trial court inquire into Lahood's competency.

On the third day of trial, Lahood stated repeatedly, both in and outside the presence of the jury, that he needed his medication and was having trouble following the proceedings.  4 Tr. at 5, 8-9, 13-14.[3]   After several such comments, the trial court adjourned the trial for the day.

Lahood's ex-wife testified during the penalty phase of the trial.  Lahood made several outbursts causing the trial court to halt testimony, remove the jury, and admonish Lahood.  *See* 6 Tr. at 20-22.

On April 30, 2004, after the jury found him guilty, Lahood attempted suicide and was hospitalized.  *See* SH-01 at 81.  On May 7, 2004, Lahood returned to court for sentencing.  He again complained about his medication and, prior to sentencing, asked for a competency evaluation.  The judge responded:  "I'm sure they'll take care of that when you get to TDCJ."  7 Tr. at 4.

### 1.    The Legal Standard

To prevail on a claim for ineffective assistance of counsel, Petitioner "must show that . . . counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.   Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In order to prevail

---

[3]     "Tr." refers to the transcript of Lahood's trial.

on the first prong of the *Strickland* test, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances. *Id.* at 688. Review of counsel's performance is deferential. *Id.* at 689.

In addition to proving that he received ineffective assistance of counsel, Lahood must also demonstrate that the state habeas court's conclusion to the contrary was unreasonable.

> "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.,* at 689 [104 S.Ct. 2052]; *Lindh v. Murphy,* 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles* [*v. Mirzayance*], 556 U.S., at ----, 129 S.Ct. [1411], at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ---**,** 129 S.Ct., at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard."

*Premo v. Moore*, 526 U.S 115, 122-23 (2011).

## 2.    **Deficient Performance**

Noting the indications of mental illness discussed above, the TCCA, in addressing Lahood's state habeas corpus application, observed:  "It appears that counsel believed that she did not need to suggest that her client was incompetent to stand trial because the court took breaks to accommodate [Lahood] before ultimately recessing for the day."  *Ex Parte Lahood*, 401 S.W.3d  at 51.  The TCCA distinguished between a trial court's duty to recognize incompetency from counsel's obligation to make reasonable investigations to protect her client's interests.  The TCCA also noted that counsel's duty in this regard is even higher when the

decision not to investigate is based on counsel's lay opinion about a medical issue. *Id.* at 51-52. The TCCA concluded that counsel rendered deficient performance. *Id.* at 52.

Respondent now argues that counsel did not render deficient performance. In light of the record evidence, including Lahood's courtroom outbursts, his history of mental illness, and his complaints that he was not receiving his medication, the TCCA's conclusion that counsel was deficient for failing to raise the issue of Lahood's competency was reasonable. It is therefore entitled to deference. Therefore, Lahood satisfies the deficient performance prong of the *Strickland* test.

### 3.    Prejudice

#### a.    Burden of Proof

After observing that a finding of prejudice would require a finding that there was a reasonable probability that Lahood would have been found incompetent to stand trial had the issue been raised, *Ex Parte Lahood*, 401 S.W.3d at 52, the TCCA found that Lahood failed to demonstrate such a probability. Lahood argues that the TCCA improperly imported the preponderance of the evidence standard Lahood would have had to meet to demonstrate incompetency at trial into the reasonable probability standard required to show *Strickland* prejudice. Citing *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990), Lahood argues that *Strickland* requires that he "need only demonstrate a 'reasonable probability' that he was incompetent, 'sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*). *Bouchillon* holds that *Strickland*'s "reasonable probability" standard "is a lower burden of proof than the preponderance standard." *Id.* If Lahood is correct that the TCCA used the wrong legal standard, then the TCCA's conclusion is contrary to, or based on an unreasonable application of, clearly established federal law and is not entitled to any deference.

The TCCA described Texas' procedure for determining incompetency as follows:

> At trial, the issue of incompetency must have first been raised by
> either a party to the case or the trial court. *See* TEX. CODE CRIM.
> PROC. art. 46B.004(a), (b) (2004) (allowing either party or the trial
> court to suggest that the defendant may be incompetent to stand
> trial). But regardless of whether a party or the trial court was the
> one to make such a suggestion, a trial court was not authorized to
> initiate an informal inquiry to determine a defendant's competency
> unless the evidence of incompetency was "sufficient to raise a
> *bona fide* doubt in the mind of the judge whether the defendant
> [was] legally competent." *Montoya v. State,* 291 S.W.3d 420, 425
> (Tex.Crim.App.2009); *see Gonzales v. State,* 313 S.W.3d 840,
> 841–42 (Tex.Crim.App.2010). Assuming that the court harbored a
> *bona fide* doubt, then it initiates an informal inquiry to determine if
> "there is some evidence from any source that would support a
> finding that the defendant may be incompetent to stand trial."
> TEX. CODE CRIM. PROC. art. 46B.004(c) (2004). We have held that
> the court is "to assay just that evidence tending to show
> incompetency, putting aside all competing indications of
> competency, to find whether there is some evidence, a quantity
> more than none or a scintilla, that rationally may lead to a
> conclusion of incompetency."  FN5  If the judge finds "some
> evidence" in the record that "rationally may lead to a conclusion of
> incompetency[,]" then a trial within a trial should be held on the
> issue of the defendant's competency. TEX. CODE CRIM. PROC. art.
> 46B.005(b) (2004); *Sisco,* 599 S.W.2d at 614. Thus, the
> determination of competency is not decided unless the court holds
> a trial to determine competency, which is authorized only if the
> court has a *bona fide* doubt that the defendant is not competent
> and, after assaying the evidence, it finds some evidence that the
> defendant is incompetent. *See Morris v. State,* 301 S.W.3d 281,
> 287 (Tex.Crim.App.2009).

> FN5. *Sisco v. State,* 599 S.W.2d 607, 613 (Tex.Crim.App.
> [Panel Op.] 1980); *see Williams* [*v. State*]*,* 663 S.W.2d
> 832 [(Tex. Crim. App. 1984)], *overruling Johnson v.*
> *State,* 564 S.W.2d 707 (Tex.Crim.App.1978) (op. on
> reh'g) (overruling a split in precedent that required
> different constructions of the same statute depending on
> when the issue of competency was raised); *see also*
> *Barber* [*v. State*]*,* 737 S.W.2d [824,] 828 [(Tex. Crim.
> App. 1987)] (applying the *Sisco–Williams* line of cases
> and remanding for an after-the-fact competency
> hearing). In *Sisco,* the appellant was convicted of

indecency with a child and sentenced to a term of imprisonment. *Sisco,* 599 S.W.2d at 608. The appellant's attorney presented a pretrial motion for a psychiatric evaluation of his client. *Id.* An expert was appointed to determine if the appellant was "mentally competent to stand trial[.]" His finding that the appellant was competent was admitted without objection at the informal competency hearing. *Id.; see* TEX.CODE CRIM. PROC. art. 46B.004(c). Although other evidence that the appellant was incompetent was presented at the hearing, the trial court found that he was competent to stand trial based on the expert's report and, as a result, no jury was empaneled. *Sisco,* 599 S.W.2d at 608–09. The trial commenced shortly thereafter, no evidence was presented, and the appellant was found guilty. After he was convicted, he filed a motion for new trial, but it was denied. *Id.* at 609. He then filed a direct appeal with this Court, in which he alleged that the trial court erred in refusing to empanel a jury to determine if the appellant was incompetent to stand trial. *Id.* at 608.

We agreed that the trial court incorrectly determined the threshold issue of whether the appellant's incompetency had been raised sufficiently to warrant empaneling a jury. *Id.* Specifically, we disapproved of the trial court considering evidence of incompetency *and* competency at the pretrial hearing. This is because an informal hearing authorized under Article 46B.004(c) of the Texas Code of Criminal Procedure is not the appropriate venue to determine a person's competency on the merits; rather, the informal inquiry is intended to determine if the issue of competency is sufficiently raised such that a formal hearing should be held. Thus, we remanded the cause back to the trial court to apply the appropriate standard of review for an informal competency inquiry. *Id.* at 614.

Article 46B.003(a) states that a person is incompetent to stand trial if the person does not have (1) "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding" or (2) "a rational as well as factual understanding of the proceedings against the person." TEX.CODE CRIM. PROC. art. 46B.003(a) (2004); *see Strickland,* 466 U.S. at 695, 104 S.Ct. 2052 ("The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors."). We have stated that the

factors experts use in conducting a competency evaluation are also helpful to the fact-finder in determining the broader question of competency. *See Morris,* 301 S.W.3d at 286 n. 10; *see also* TEX.CODE CRIM. PROC. art. 46B.024 (2004). These factors include whether a defendant can

> (1) understand the charges against him and the potential consequences of the pending criminal proceedings; (2) disclose to counsel pertinent facts, events, and states of mind; (3) engage in a reasoned choice of legal strategies and options; (4) understand the adversarial nature of criminal proceedings; (5) exhibit appropriate courtroom behavior; and (6) testify.

> *Morris,* 301 S.W.3d at 286 n. 10. A person is presumed to be competent, and the burden is on a criminal defendant to prove incompetency by a preponderance of the evidence. TEX.CODE CRIM. PROC. art. 46B.003(b) (2004).

*Ex Parte Lahood*, 401 S.W.3d at52-54. The TCCA announced the following standard for determining *Strickland* prejudice:

> The focus of the prejudice inquiry here is whether an applicant can show that there was a reasonable probability that he would have been found incompetent to stand trial if the issue of competency had been raised and fully considered. *See Strickland,* 466 U.S. at 695, 104 S.Ct. 2052. This is true because, under Texas law, even though there are conditions precedent that must be met to obtain a trial on competency, the only way the *outcome* of the guilt phase of the proceeding would be different is if the defendant proved that he was incompetent to stand trial. Anything less than a finding of incompetence would not have changed the outcome.  In assessing prejudice, we look to the entire record

*Id.* at 54.  Contrary to Lahood's characterization, the TCCA did not state that Lahood was required to prove that he was incompetent to demonstrate prejudice.  Rather, he had to show that there was a reasonable probability that he would have been found incompetent. This is an important distinction because the "reasonable probability" standard is drawn

directly from *Strickland* and is the correct legal standard.   Therefore, the TCCA's conclusion is not contrary to clearly established federal law.

While Lahood argues that requiring him to show a reasonable probability that he would have been found incompetent raises the burden of proof, it does not.   As the TCCA explained, without a finding of incompetency, there would have been no change in the outcome, and thus no *Strickland* prejudice.   Therefore, the requirement that Lahood demonstrate a reasonable probability that he would have been found incompetent is simply stating that he was required to demonstrate a reasonable probability that the outcome of the trial would have been different had counsel requested a competency hearing.   The TCCA did not unreasonably apply the *Strickland* standard.

### b.   <u>Prejudice</u>

Lahood also argues that the state habeas court's conclusion that he failed to demonstrate a reasonable likelihood that he would have been found incompetent is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   The TCCA summarizes the trial court's conclusions as being based on Lahood's in-court demeanor and his answers to questions during a colloquy with the trial court.   The court also relied on an affidavit by trial counsel stating that she believed Lahood's decision to testify was based on a rational understanding of the situation.   Lahood argues that this conclusion ignores evidence that Lahood had a long history of mental illness and was not being properly medicated at the time of trial, and uncontroverted expert evidence that Lahood was probably incompetent.

Dr. Victor R. Scarano, a board certified forensic psychiatrist, submitted two affidavits in connection with Lahood's state habeas corpus proceeding.   In the second affidavit,

submitted after the TCCA remanded the case for additional factual findings, Dr. Scarano notes that Lahood's medications were not adjusted to address the inherently stressful situation of his trial, and that he was also not receiving all of his prescribed medications at the Harris County Jail.  In addition to his courtroom behavior, Jail staff noted that Lahood was "[g]etting manic."  SH (Doc. # 9-22) at 90.  Scarano also opines that "Lahood's decision to testify, in the face of his decompensating mental state and reappearance of manic behavior, should have prompted his attorney to raise the issue of his competency, at that time, to stand trial . . . ."  *Id.* at 91.  Scarano continues that the evidence reflects that Lahood lacked a rational understanding of the defense strategy and trial sequence, and that he felt coerced to testify.  He also opines that Lahood's decision to testify, and face damaging cross examination, *see, e.g.,* 4 Tr. at 8-13, was not rational and was prompted by "the grandiosity associated with a developing manic episode."  *Id.* Scarano also notes that Lahood's moments of clarity during the trial "are fleeting and punctuated by periods and incidents reflecting significant mental instability, a not uncommon phenomenon in cases where an individual is suffering from severe mental illness."  *Id.* at 92.

Dr. J. Ray Hays, a psychologist, also submitted an affidavit.  Dr. Hays reviewed relevant records and concluded that "there was objective bona fide evidence that Michael Lahood was incompetent to stand trial . . . ."  SH (Doc. # 10-1) at 49.  He based this opinion on Lahood's mental health history, contemporaneous mental health records reflecting Lahood's medications and behavior, and Lahood's documented behavior in court.  *Id.* at 49-53.

The Supreme Court has made clear that due process requires that a defendant must be competent throughout his trial, not merely at the beginning of trial or at intervals during the trial.  *See Drope v. Missouri*, 420 U.S. 162, 180-81.  There was strong evidence before the state habeas court that Lahood was, at best, intermittently competent.  The habeas court's conclusion that Lahood failed to demonstrate a reasonable probability that he would have been found incompetent is based solely on lay opinion, intermittent lucidity, and in complete disregard of expert opinion.  This was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).  Accordingly, the state court conclusion is not entitled to deference.

Because the evidence so strongly supports at least a strong suspicion that Lahood was incompetent, there is a reasonable probability that he would have been found incompetent had counsel raised the issue at trial, and that probability is thus sufficient to undermine confidence in the outcome of the trial.  Lahood therefore demonstrates *Strickland* prejudice and is entitled to relief on this claim.

### C.    <u>Due Process</u>

Lahood next contends that the trial court's failure to conduct an inquiry into his competency to stand trial denied him due process of law.  "Due process prohibits the conviction of a person who is mentally incompetent." *Bishop v. United States,* 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). The test of incompetency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402

(1960) (citation omitted).  Due process requires a trial court to inquire as to a defendant's competency when there is reason to doubt that the defendant is competent.  *See*, *e.g.*, *Pate v. Robinson*, 383 U.S. 375, 385 (1966).

Under Texas law, a trial court must conduct a competency hearing if evidence of the defendant's incompetency appears during the trial.  TEX. CODE CRIM. PROC. art. 46.02 § 2(b).

> A Section 2 or "competency inquiry"  is required only if the evidence brought to the judge's attention raises a bona fide doubt in the judge's mind about the defendant's competency to stand trial. Evidence is usually sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant."  When such a bona fide doubt does exist, the court must conduct the Section 2 competency inquiry to determine whether there is "some evidence" to support a finding of incompetency, and, if so, to commence a Section 4 competency hearing before a jury.

*McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003).

On Lahood's direct appeal, the Court of Appeals held that the evidence during the trial did not rise to the level of a *bona fide* doubt about Lahood's competency.  *State v. Lahood*, 171 S.W.3d 613, 618-19 (Tex. App. Houston [14th Dist.] 2005).  The court stated:

> The only time during trial that there was any indication appellant was having difficulty understanding the proceedings was on his second day of testimony when he stated that he was uncomfortable and seeing the lights blink and had not had his medication. The judge immediately recessed the proceedings. The next day, appellant continued testifying without any apparent difficulty, and he explained that he was doing much better because he had received his medication the night before. Because it appears from the record that the trial court acted appropriately in dealing with appellant's difficulty in testifying on the second day, and there is no indication in the record that appellant did not understand the

proceedings or had trouble communicating during any other portion of the trial, we find that the trial court did not abuse its discretion in failing to sua sponte inquire into appellant's competency to stand trial. FN2 Accordingly, appellant's first issue is overruled.

> FN2. We further note that the trial court was in a much better position than are we to assess appellant's demeanor both during his alleged period of confusion and during the rest of the trial. Additionally, beyond his own testimony, appellant cites no other evidence regarding incompetency. *See McDaniel,* 98 S.W.3d at 711 (suggesting that a defendant's bare allegation of incompetency is not sufficient to raise a bona fide doubt requiring inquiry).

*Id.* at 619.

While it is not this federal habeas court's role to question a state court's interpretation of state law, the due process clause of the Fourteenth Amendment to the United States Constitution requires a trial court to conduct an inquiry into a defendant's competency when there is reason to doubt that the defendant is competent. *See*, *e.g.*, *Pate v. Robinson*, 383 U.S. 375, 385 (1966). The state appellate court's conclusion that there was no such reason is unreasonable.

As discussed above, the evidence available to the trial court included Lahood's lengthy history of mental illness, the fact that he was supposed to receive psychoactive medications from Harris County Jail medical staff during his pretrial incarceration and during the trial, his verbal expressions of confusion and disorientation during the trial, his explicit statements that he was not receiving his medication, and a series of inappropriate

outbursts during trial. The fact that the trial court felt compelled to stop the trial at one point due to Lahood's in-court behavior strongly contradicts the appellate court's conclusion that there was no bona fide evidence of incompetency. As respondent acknowledges, "[i]f the trial court receives evidence, viewed objectively, that should raise a reasonable doubt as to the defendant's competency, yet fails to make further inquiry, this constitutes a denial of a fair trial. *Carter v. Johnson*, 110 F.3d 1098, 1105 n.7 (5th Cir. 1997)." Motion for Summary Judgment at 26-27.

At a minimum, due process required the trial court to conduct an inquiry to determine whether Lahood was competent to stand trial *Id.* The trial court's failure to do so violated Lahood's right to due process.

Respondent argues that, on federal habeas corpus review, Lahood must demonstrate that any error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks and citation omitted). *Brecht*, however, drew a sharp distinction between trial error, which is subject to harmless error analysis, and structural error, which is not.

> Trial error occurs during the presentation of the case to the jury, and is amenable to harmless-error analysis because it may be quantitatively assessed in the context of other evidence presented in order to determine the effect it had on the trial. At the other end of the spectrum of constitutional errors lie structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards. The existence of such defects—deprivation of the right to counsel, for example—requires automatic reversal of the conviction because they infect the entire trial process.

*Id.* at 629-30 (internal citations and quotation marks omitted).  Though there does not appear to be any authority directly on point, subjecting an incompetent defendant to trial seems clearly to fall under the category of structural error, in that the effect of the defendant's incompetency is not quantifiable, and it so infects the entire trial process that it is not amenable to harmless error review.

As discussed above, the trial court had before it significant evidence calling Lahood's competency into doubt.  In the face of such *bona fide* evidence of incompetency, the trial court's failure to conduct an inquiry into Lahood's competency, as required by Texas law and the due process clause of the Fourteenth Amendment, denied Lahood due process.  Therefore, Lahood is entitled to relief.

**IV.**    **Conclusion And Order**

For the foregoing reasons, it is ORDERED as follows:

A.    Respondent William Stephens' motion for summary judgment (Dkt. No. 14) is DENIED;

B.    Petitioner Michael George Lahood's first amended petition for a writ of habeas corpus (Dkt. No. 2) is GRANTED;

C.    The respondent shall release Lahood  from custody unless, within 60 days, the State of Texas acts to retry Lahood; and

D.    This Order is STAYED pending completion of all appeals to the Fifth Circuit and Supreme Court of the United States, or the expiration of time to seek any such appeal.

The Clerk shall notify all parties and provide them with a true copy of this Memorandum and Order.

SIGNED on this 3rd day of March, 2015.

Kenneth M. Hoyt
United States District Judge